RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0277p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

───────────────

JEREMY HOLLAND; KEN HOLLAND; PATTY HOLLAND,

      *Plaintiffs-Appellants*,

    *v.*

KENTON COUNTY PUBLIC SCHOOLS; HENRY WEBB, Superintendent of Kenton County Public Schools, BRENNON SAPP, Principal of Scott High School, and CAROLYN STEWART, Assistant Principal of Scott High School, in their individual and official capacities; KENTON COUNTY BOARD OF EDUCATION; KENTUCKY DEPARTMENT OF EDUCATION; DANIELLE RICE, Director of Special Education for Kenton County Public Schools; CARL WICKLUND, KAREN COLLINS, JESICA JEHN, SHANNON HEROLD, and GENE DUPIN, Kenton County School Board Members, in their official capacities,

      *Defendants-Appellees*.

No. 22-5874

───────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Covington.
No. 2:21-cv-00041—David L. Bunning, District Judge.

Decided and Filed: December 21, 2023

Before: SUTTON, Chief Judge; WHITE and BUSH, Circuit Judges.

───────────────

### COUNSEL

**ON BRIEF:** Marianne S. Chevalier, CHEVALIER & KRUER, P.S.C., Ft. Mitchell, Kentucky, for Appellants. Mary Ann Stewart, Olivia F. Amlung, ADAMS LAW, PLLC, Covington, Kentucky, for Kenton County Appellees. Ashley Lant, KENTUCKY DEPARTMENT OF EDUCATION, Frankfort, Kentucky, for Appellee Kentucky Department of Education. Amy E. Halbrook, CHASE COLLEGE OF LAW, Highland Heights, Kentucky, for Amicus Curiae.

      SUTTON, C.J., delivered the opinion of the court in which BUSH, J., joined. WHITE, J. (pp. 9–10), delivered a separate opinion concurring in part.

---

**OPINION**

---

SUTTON, Chief Judge.  In accordance with the Individuals with Disabilities Education Act, the Kenton County School District developed an individualized education plan to meet the learning needs of high school student Jeremy Holland.  Under the plan, special education teachers accompanied Jeremy to several of his classes and offered him behavioral instruction at the end of the school day.  This approach worked until Jeremy's senior year.  At that point, the family enrolled him as a full-time student at the local community college and claimed that the Act required the school district to provide the same support and other special education services there.  At issue is whether the Act imposes this obligation on the school district.  We hold that it does not.

I.

Jeremy Holland has several learning impediments, including ADHD, anxiety, dysgraphia, nonverbal learning disorder, sensory integration disorder, and static encephalopathy.  These challenges affected his ability to attend classes at Scott High School in the Kenton County School District.  Consistent with the Individuals with Disabilities Education Act, the school district and Jeremy's parents met periodically to develop an individualized education plan that would address Jeremy's learning needs.

The most recent plan went into effect on December 18, 2018, halfway through Jeremy's junior year, and was set to last until December 17, 2019, halfway through his senior year.  The plan proposed the following course of study for Jeremy's junior and senior years.  Each year, he would take four classes, including math and English, at Scott High School, and four elective automotive-technician classes at Gateway Community and Technical College as part of the school's dual enrollment program.  Jeremy planned to finish the automotive technician program at the community college after he graduated from high school.

The plan provided special education services to help Jeremy manage his learning needs. Because Jeremy struggled to complete his math and English assignments, the plan provided that

a special education teacher would accompany Jeremy to the math and English classrooms as part of a "collaborative" education model.  R.19-2 at 935–36.  It also designated a separate resource classroom where Jeremy could receive individualized behavioral support during the school day.

Jeremy completed his junior year under the plan, taking some classes at the high school and some electives at the community college.  The Hollands and school officials clashed several times that year over how to handle Jeremy's sometimes erratic behavior.  As a result, Jeremy and his family decided that he would not take any more classes at Scott High School.  Just ahead of his senior year, Jeremy signed up to take an English 101 class and multiple automotive classes at Gateway, spread out across Gateway campuses in three cities.  With this new schedule, the school district worried that Jeremy would be "unable to receive th[e] level of minutes" of special education resources at Scott that he needed under the plan.  *Id.* at 1052.

The school district and Jeremy's parents met at the beginning of September to discuss how to navigate this change in the schedule.  The school district was "willing and able to provide services according to Jeremy's current [plan]" if he returned to a high school in the school district for part of the day.  *Id.* at 1055.  But the school district explained that it could not continue the "collaborative" model at the community college because Gateway would not allow the school district "to send staff to provide services in Gateway classrooms."  *Id.* at 1052.

If Jeremy preferred to stay at Gateway full time, the school district proposed that the family and school team amend the plan.  When his Gateway schedule permitted, Jeremy could "come to Scott" or to any high school in the district to "receive services in a resource setting" that would "support Jeremy with his college courses."  *Id.* at 1053–55.  The school district also advised the Hollands that "Gateway offers disability services of their own that Jeremy can request."  *Id.* at 1053.

Jeremy's parents rejected these options.  They "refuse[d] to allow Jeremy to come to Scott High School" or any other high school in the district.  *Id.* at 1055.  And they insisted that the school district still provide the existing support services to Jeremy at the community college. The parents and the school district could not resolve the impasse.  Jeremy in the end took all of his senior year courses at Gateway and opted not to take advantage of any of the special

education resources offered under the plan at Scott High School.  The Hollands requested that the district take care of Jeremy's Gateway tuition and transportation, but ultimately footed the bill themselves.

In October 2019, in the midst of Jeremy's senior year, Jeremy's parents requested a hearing from the Kentucky Department of Education, arguing that the school district violated the Act and the terms of the plan by not providing his existing support services at the community college.  After a hearing, the agency ruled for the school district.  Jeremy and his parents appealed to the Department's Exceptional Children Appeals Board, which likewise ruled for the school district.

In March 2021, Jeremy and his parents filed this lawsuit in federal court.  The Hollands claimed that the school district, the superintendent, the school board members, and various employees violated the Individuals with Disabilities Education Act by failing to implement Jeremy's existing individualized education plan at the community college.

The district court granted summary judgment in favor of the school district.  In relevant part, it found that the school district was not obligated to provide Jeremy with services at the community college because taking a "full class load at Gateway" was never part of Jeremy's plan, and because the Act's protections do not apply to a student's postsecondary education. R.25 at 23 (emphasis omitted).

II.

As a form of cooperative federalism, the Individuals with Disabilities Education Act appropriates federal money to support local efforts to provide special education services to children with disabilities.  States that accept the federal funds must comply with the Act's requirements.  In particular, participating states must make a "free appropriate public education" available to all children with disabilities.  20 U.S.C. § 1412(a)(1).  As part of that obligation, a team of the child's parents and his educators must develop an individualized education program for each student, *see id.* § 1414(d)(1)(B), which includes "a statement of the special education" and other services that the school will provide to the child, *id.* § 1414(d)(1)(A)(i)(IV), (VIII).

The plan must be "reasonably calculated to enable the child to receive educational benefits." *Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 394 (2017) (quotation omitted).

The Act is not without limits. It requires only that states "provide children with disabilities an appropriate education, not the very best possible special education services." *Wise v. Ohio Dep't of Educ.*, 80 F.3d 177, 185 (6th Cir. 1996). Once a school district puts a plan for a free and appropriate public education in place, parents may not "unilaterally" change their minds and put their child in a new school of their choice, then insist that the school district pay any tuition for the new school or otherwise provide the same support services at the new school. *Id.*

The Act is also restricted to certain types of education. It applies to education at the preschool, elementary school, and secondary school levels. Only there must public schools provide "special education and related services" in conformity with each student's plan. 20 U.S.C. § 1401(9). School districts do not have an obligation to provide such services at the postsecondary level after a student graduates from high school. *See id.* § 1401(27). And they do not have an obligation, generally speaking, to provide the same services to high school students when they enroll in dual-credit courses offered at postsecondary institutions. *Bradley v. Jefferson Cnty. Ky. Pub. Schs.*, No. 22-6091, slip op. at 8 (6th Cir. Dec. 21, 2023).

At stake today is whether the school district violated the terms of Jeremy's individualized education plan or the Act when it refused to provide the same support services for Jeremy Holland at the Gateway community college. Reviewing the district court's legal determinations with fresh eyes and its factual determinations for clear error, we hold that the school district complied with the plan and the Act. *See Bd. of Educ. of Fayette Cnty. v. L.M.*, 478 F.3d 307, 313 (6th Cir. 2007).

The school district, in the first place, did not need to provide services at the community college to fulfill the Act's guarantee of a "free appropriate public education." Recall that the Act does not require the state to provide services at the postsecondary level. *Bradley*, slip op. at 5. Whether an education is "secondary" or "postsecondary" is a matter of state law. *Id.*; *see* 20 U.S.C. § 1401(27). Kentucky law provides that a high school student who enrolls in "a college-level course of study" on a college campus and simultaneously earns high school and

college credit receives a "postsecondary" education, one ineligible for automatic coverage under the Act. *See Bradley*, slip. op. at 5 (quoting Ky. Rev. Stat. § 164.002(5)–(6)); *see also* Ky. Dep't of Educ., *Questions and Answers Related to Dual Credit Courses and Students with Individualized Education Programs (IEPS)*, 2 (Nov. 1, 2022).

As in *Bradley*, Jeremy's education at Gateway community college was postsecondary, not secondary. Gateway is part of the Kentucky Community and Technical College System, not part of the school district, and high school students who enroll at Gateway receive instruction alongside college students on a college campus. The high school course guide informs all students that tuition and transportation for dual-credit classes is the responsibility of the student, not the school. Jeremy enrolled full time at Gateway during his senior year without any input from the school district, all at a time when his existing plan called for the school district to provide all of his special education services at Scott High School. Still more problematic for the Hollands, the Gateway community college refused to allow the school district's special education teachers to provide these support services on the Gateway campus. It's difficult to imagine how the Act could require a school district to provide a special education service at a community college when the college does not permit the service on its campus. The Hollands do not offer an answer to this formidable obstacle to their claim.

The Hollands, relatedly, have not shown that the school district violated the terms of Jeremy's existing plan. Recall what the plan demanded of the school district. It said that Jeremy would receive collaborative support from special education teachers during his high school English and math classes at Scott High School, and that he would visit the special education classroom for behavioral support after his classes there. It also offered Jeremy certain "transition services," such as a "Multi Year Course of Study" that planned Jeremy's future courses, an individualized learning plan to assess Jeremy's preferences and interests, and a referral to the Kentucky Office of Vocational Rehabilitation. R.19-2 at 931. Nothing in the plan indicated that Jeremy would receive these services at any place other than Scott High School or that the school district would provide these services wherever he wished to go. The only portion of the plan that mentions Gateway is the proposal that Jeremy could take automotive electives at Gateway. But the school district never reneged on that offer. He was free to do just that. The school district

just never said that Jeremy could attend a full schedule at Gateway or that it would provide special education services there in connection with the automotive-technician classes.

If any participant in this dispute veered from the plan, it was the Hollands, not the school district. Jeremy signed up to take all of his classes at Gateway community college without any input from the school district. In response, the school district offered Jeremy multiple options. He could attend half-days at Gateway, as he did during his junior year, with the school district providing transportation to bring Jeremy back to Scott High School for English and math classes and the plan's collaborative services that went with those classes. In the alternative, he could amend the plan, continue his full schedule at Gateway, and come back to Scott High School to receive after-school services in a behavioral-resource setting. Or if he did not want to come back to Scott High School, Jeremy could receive the same after-school services at either of the other two high schools in the district. The Hollands rejected all of these options. The school district, after offering Jeremy multiple paths to a "free appropriate public education," had no obligation to provide services at the school of the Hollands' unilateral choosing, one that refused to allow these support services on its campus. *See Wise*, 80 F.3d at 185.

The Hollands counter that the plan needed to offer the existing services at Gateway because, when a high school student takes classes at a college for dual credit, he is still receiving a secondary education under the Act. They point out that Kentucky requires that high schools must "offer a core curriculum of AP, IB, dual enrollment, or dual credit courses, using either or both on-site instruction or electronic instruction," and must admit any interested student to "AP, IB, dual enrollment, and dual credit courses." Ky. Rev. Stat. § 160.348. As they see it, Jeremy's full course load at the community college amounted to a secondary school education covered by the Act.

We rejected the same argument in *Bradley*, slip op. at 9. That Kentucky high schools must admit all students to academically appropriate courses, sometimes including dual enrollment or dual-credit classes, does not prevent Kentucky from categorizing dual enrollment or dual-credit classes as "postsecondary." *See id.* The school district did not exclude Jeremy from the same opportunity that it offers to other students who take part in dual-credit programs, as confirmed by the reality that he took dual-credit classes during his junior year and senior year.

The school district merely declined to send its own teachers where Gateway would not allow them to go, or to ferry Jeremy to three different Gateway campuses to accommodate his preferred schedule.

The Hollands separately argue that, even if the Act does not cover postsecondary education, it still requires a school district to comply with the terms of a student's plan. When the team drafted Jeremy's plan, it "discussed" the possibility that, if Jeremy performed well on his ACT tests, he could be eligible to "tak[e] a college English course or English elective courses at Scott [High School]." R.19-2 at 1025. In other words, even if the school district never made an express promise to provide these support services at Gateway, the Hollands claim that it made an implicit promise to do as much. But the services the Hollands wanted at Gateway were neither part of the plan's "paperwork," as they put it, nor the "actual happening[s] 'on the ground,'" as they also put it. Appellants' Br. 16–17. At most, when the team prepared the plan, it discussed the possibility that, if he scored well, Jeremy might be eligible to take English at Gateway Community College or at Scott. But the team, including Jeremy's parents, did not write this option into Jeremy's plan or otherwise agree to provide services at Gateway. In the absence of any such commitment, the school district had no obligation to undertake it when the family unilaterally moved Jeremy.

As one final point, the Hollands argue that the district court erred in dismissing their claims under the Americans with Disabilities Act and Rehabilitation Act. No error occurred. The Hollands moved the district court to dismiss these precise claims, and the district court granted their request.

We affirm.

---

**CONCURRENCE**

---

HELENE N. WHITE, Circuit Judge, concurring.  The majority concludes that Jeremy Holland's school district was not required to implement his individual education program (IEP) at Gateway community college in the 2017 for two reasons:  (1) his Gateway coursework was postsecondary, and (2) the Hollands unilaterally enrolled him in off-campus, full-time coursework at Gateway without Jeremy's IEP team agreeing it was necessary or being able to provide support at Gateway.  I agree with the majority's conclusion for the second reason only.

As I concluded in *Bradley v. Jefferson County Public Schools*, Kentucky law considers dual-credit, dual-enrollment coursework to be secondary education.  No. 22-6091, slip op. at 13–17 (6th Cir. Dec. 21, 2023) (White, J., dissenting).  Jack Bradley attended Craft Academy for Excellence in Science and Mathematics, a program offered exclusively to high-school students as a means to complete their high-school degree through coursework at Morehead State University.  Because Kentucky requires its secondary schools to provide a "core curriculum" that includes college-level coursework, including dual-credit, dual-enrollment courses like those taken at Craft Academy, and because Jack took those courses for high-school credit, they qualify as secondary education.  So too with the courses at Gateway:  Jeremy took Gateway courses to complete his high-school degree, and, for the 2018-2019 school year, his public high school encouraged and facilitated this coursework by providing transportation for Jeremy and his non-disabled peers to and from Gateway.  I thus disagree with the majority's conclusion that these classes could not be considered part of Jeremy's secondary education.

However, accepting that dual-credit, dual-enrollment courses are secondary education, Jeremy must also show that the courses he took were necessary for a free appropriate public education (FAPE).  *See* 20 U.S.C. § 1412(a); *id.* § 1401(9).  And the Hollands fail to do so.  Not only is a full courseload at Gateway inconsistent with Jeremy's IEP, but his IEP team informed the Hollands that, due to Gateway's policies, it would not have the ability to implement Jeremy's IEP if he took the full courseload.  The IEP team offered several alternatives, including

providing IEP services at a different high school if Jeremy did not want to return to his current high school.  Of note, his IEP called for a schedule that included some coursework at Gateway, and some coursework at a high school, where the IEP team could provide support services.  But the Hollands refused those options, instead unilaterally choosing to enroll Jeremy fulltime at Gateway.  Because this was not necessary for Jeremy's FAPE or called for by his IEP, the school district was not required to implement his IEP at Gateway.  *See Wise v. Ohio Dep't of Educ.*, 80 F.3d 177, 185 (6th Cir. 1996).  I thus join in the judgment of affirmance.